1   M. Elizabeth Graham (SBN 143085)
    GRANT & EISENHOFER P.A.
2   2325 Third Street, Suite 329
    San Francisco, CA 94107
3   Tel.: (415) 229-9720
    Fax: (415) 789-4367
4   Email: egraham@gelaw.com

5   [Additional counsel appear below]

6
    *Counsel for City of Sterling Heights Police &*
7   *Fire Retirement System*

8
                **UNITED STATES DISTRICT COURT**
9             **NORTHERN DISTRICT OF CALIFORNIA**
                     **SAN JOSE DIVISION**
10

11  CITY OF STERLING HEIGHTS POLICE &
    FIRE RETIREMENT SYSTEM, Individually
12  and On Behalf of All Others Similarly
    Situated,
13                                              Case No.

14                       Plaintiff,             <u>CLASS ACTION</u>

15            v.                                COMPLAINT FOR VIOLATIONS OF
                                                THE FEDERAL SECURITIES LAWS
16  SYNOPSYS, INC., SASSINE GHAZI,
    SHELAGH GLASER, SUDHINDRA              <u>**DEMAND FOR JURY TRIAL**</u>
17  KANKANWADI, AART J. DE GEUS, LUIS
    BORGEN, MARC N. CASPER, JANICE D.
18  CHAFFIN, BRUCE R. CHIZEN,
    MERCEDES JOHNSON, ROBERT G.
19  PAINTER, JEANNINE P. SARGENT, JOHN
    G. SCHWARZ, and ROY VALLEE,
20
                         Defendants.
21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff City of Sterling Heights Police & Fire Retirement System, individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to Plaintiff, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by Plaintiff's attorneys, which included a review of Defendants' public documents, conference call transcripts and announcements made by Defendants, filings with the United States Securities Exchange Commission ("SEC"), wire and press releases published by and regarding Synopsys, Inc. ("Synopsys" or the "Company"), analysts' reports, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    This federal securities class action asserts strict liability claims under the Securities Act of 1933 (the "Securities Act"). This action arises from Defendants' (defined below) materially false and misleading statements and omissions to investors regarding Synopsys's business operations, financial performance, and market conditions.

2.    This is a class action brought on behalf of all persons who purchased or otherwise acquired Synopsys common stock in exchange for their shares of Ansys, Inc. ("Ansys") common stock in the Synopsys acquisition of Ansys effected on or about July 17, 2025, for violations of Sections 11, 12(a)(2), and 15 of the Securities Act, against Synopsys and the Defendants.

3.    Synopsys is a Mountain View, California-based technology company that provides software, intellectual property, and services used to design and verify advanced semiconductor chips. The Company's products include electronic design automation ("EDA") tools, pre-designed semiconductor components known as Design IP, and software security and quality testing solutions. Major semiconductor and electronics manufacturers purchase and use Synopsys's tools to manage complex chip design processes and accelerate time to market.

4.    On January 16, 2024, the Company announced that Synopsys had entered into an agreement to acquire Ansys for total consideration of approximately $35 billion (the "Acquisition"). Sassine Ghazi, the President and Chief Executive Officer of Synopsys, touted

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the proposed merger as a maneuver that would "deliver a holistic, powerful and seamlessly integrated silicon to systems approach to innovation to help maximize the capabilities of technology R&D teams across a broad range of industries."

5.     On March 14, 2024, Synopsys filed with the SEC a registration statement for the Acquisition on Form S-4, which, after an amendment, was declared effective on April 17, 2024 (together, the "Registration Statement"). On April 17, 2024, Synopsys filed with the SEC a prospectus and proxy statement for the Acquisition on Form 424(b)(3) (the "Prospectus" and together with the Registration Statement, the "Acquisition Documents"). The Acquisition Documents stated that Ansys shareholders would receive $197.00 in cash and 0.345 shares of Synopsys common stock in exchange for each share of Ansys they held at the time of the acquisition.

6.     The Acquisition Documents were materially false and misleading.  Defendants concealed risks the Company faced from customers including Intel, its largest customer, whose business with Synopsys was facing uncertainties. Intel ultimately decided to switch its focus to a different technology, thus reducing its dependency and expenditures on Synopsys, causing significant harm to the business of Synopsys.

7.     On September 9, 2025, investors learned the truth about the previously-concealed weaknesses in Synopsys's business. On that day, Synopsys reported its third quarter 2025 financial results and revealed that the Company's "IP business underperformed expectations." Ghazi reported that revenues for the Company's Design IP segment had declined 8% year-over-year and that the Company would "need to pivot our IP resources and road map to the highest growth opportunities." This news caused the price of Synopsys stock to fall by 35.8%, dropping from $604.37 to $387.78 per share on September 10, 2025. Former Ansys shareholders who received Synopsys stock at an inflated price when the Acquisition became effective were damaged as a result of the false and misleading statements in the Acquisition Documents.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

8.    Defendants' wrongful acts and omissions and the resulting decline in the market value of the Company's securities caused Plaintiff and Class members to suffer significant losses and damages.

## II.    JURISDICTION AND VENUE

9.    Plaintiff brings the claims asserted herein under Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2), and 77o).

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act, 15 U.S.C. §77vv.

11.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and §22 of the Securities Act (15 U.S.C. § 77v(a)), because Synopsys maintains offices in this District and many of the acts giving rise to the violations complained of in this Action, including the preparation and dissemination of materially false and misleading statements, occurred in substantial part in this District. The intra-district assignment to the San Jose division of the Court is proper under Local Rule 3-2(e) because a substantial number of the events or omissions giving rise to the claims arose in Sunnyvale County, where Synopsys is headquartered and the Defendants conduct business.

12.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## III.    PARTIES

### A.    PLAINTIFF

13.    Plaintiff City of Sterling Heights Police & Fire Retirement System ("Sterling Heights PFRS") is a public employee retirement system based in Sterling Heights, Michigan. Sterling Heights PFRS held shares of Ansys common stock, which were converted into shares of Synopsys common stock upon completion of the Acquisition, as set forth in the attached

certification, and suffered damages as a result of the violations of the securities laws alleged in this Complaint.

**B.    DEFENDANTS**

14.    Defendant Synopsys is a publicly traded company that trades its securities on the NASDAQ under the symbol SNPS. Headquartered in Mountain View, California, it is a leading provider of electronic design automation software and semiconductor IP used by companies that design advanced chips and complex electronic systems. Its customers include major semiconductor manufacturers, fabless chip designers, systems companies, and technology firms developing products in AI, automotive, cloud computing and consumer electronics industries. Synopsys holds a key position in the chip design ecosystem because its tools are essential for creating, testing and verifying modern integrated circuits.

15.    The two primary revenue generating segments of Synopsys are (1) EDA (Electronic Design Automation), which includes software tools and services for designing, simulating, verifying and analyzing integrated circuits and complex electronic systems; and (2) Design IP, which provides prebuilt semiconductor intellectual property blocks such as interface protocols, embedded processors, security IP and related subsystems. The Company licenses its EDA tools and IP through long-term agreements and contracts and offers related support services. Synopsys's EDA software and IP are essential for modern chip development, helping customers improve design efficiency, reduce errors and accelerate time to market. The largest customer of Synopsys is Intel.

16.    On March 14, 2024, Synopsys filed the Registration Statement for the Acquisition on Form S-4 with the SEC. After an amendment, the Registration Statement was declared effective on April 17, 2024.  Also on April 17, 2024, Synopsys filed the Prospectus for the Acquisition on Form 424B3 with the SEC. The Acquisition Documents stated that Ansys shareholders would receive $197.00 in cash and 0.345 shares of Synopsys common stock in exchange for each share of Ansys stock that they held at the time of the merger (other than shares

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

of Ansys common stock held by Synopsys or certain of its subsidiaries, shares held by Ansys in treasury, or shares for which appraisal was properly demanded under Delaware law).

17.    Defendant Sassine Ghazi ("Ghazi") served as the Chief Executive Officer ("CEO") of Synopsis at all relevant times and signed the Acquisition Documents.

18.    Defendant Shelagh Glaser ("Glaser") was the Chief Financial Officer ("CFO") of Synopsys at all relevant times and signed the Acquisition Documents.

19.    Defendant Sudhindra Kankanwadi was the Chief Accounting Office of Synopsys at the time of the Acquisition and signed the Acquisition Documents.

20.    Defendant Aart J. de Geus was the Executive Chair of Synopsys's Board of Directors at the time of the Acquisition and signed the Acquisition Documents.

21.    Defendant Luis Borgen was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

22.    Defendant Marc N. Casper was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

23.    Defendant Janice D. Chaffin was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

24.    Defendant Bruce R. Chizen was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

25.    Defendant Mercedes Johnson was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

26.    Defendant Robert G. Painter was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

27.    Defendant Jeannine P. Sargent was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

28.    Defendant John G. Schwarz was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

29.     Defendant Roy Vallee was a Director on the Synopsys Board of Directors and signed the Acquisition Documents.

30.     The Defendants identified in paragraphs 17–29 are collectively referred to as the "Individual Defendants." The Individual Defendants, together with Synopsys, are referred to as "Defendants."

31.     Each of the Individual Defendants signed the Acquisition Materials. Their failure to conduct adequate due diligence in connection with the Acquisition and the preparation of the Acquisition Materials was a substantial factor leading to the harm complained of herein.

32.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the relevant period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

## IV.    SUBSTANTIVE ALLEGATIONS

33.     Synopsys provides tools and services to the semiconductor industry to help them make chips. It has two segments: Design Automation and Design IP ("IP," referring to the intellectual property that segment sells). Within the Design Automation segment, Synopsys makes software that its customers use to design and test chips. Synopsys creates revenue by selling subscriptions to use the software. A lesser part of the Design Automation segment also includes the sale of prototyping and emulation hardware. In the IP business, Synopsys designs circuits that customers use as components in larger chip designs. In the Company's words, the benefit to customers is that they can "reduce integration risk and speed time to market" by buying IP from the Company. Synopsys realizes revenue on IP when customers take control of the IP license, and also receives royalties when customers sell products incorporating the IP.

1

2

3     **A. The Synopsys-Intel Relationship**

4        34.    Synopsys's largest customer is Intel.    The companies have a decades-long

5     relationship, and Intel uses Synopsys's services in both EDA and IP.

6        35.    In March 2021, Intel announced its "IDM 2.0" initiative, which consisted of a

7     $20 billion expansion of the Company's manufacturing or "foundry" capacity.    At least initially,

8     Intel intended to act as a traditional foundry for third parties without their own manufacturing

9     capabilities.    In June 2023, Intel announced that it was transitioning to an "internal foundry"

10    model in which its business units would engage with its manufacturing group in a similar arms-

11    length fashion that fabless semiconductor companies engage with external foundries.    Intel

12    claimed at the time that the change was "key to [its] overarching IDM 2.0 strategy" and would

13    help improve long-term margins.

14       36.    Soon thereafter in August 2023, as Intel implemented its IDM 2.0 strategy, Intel

15    and Synopsys announced that they had entered into an agreement to expand their longstanding

16    EDA and IP relationship "with the development of a portfolio of IP on Intel 3 and Intel 18A for

17    Intel's foundry customers."    As part of the deal, Synopsys would "enable a range of its

18    standardized interface IP portfolio on Intel's leading-edge process technologies," which would

19    in turn give Intel's foundry customers access to the IP.    The deal would ostensibly "accelerate

20    design execution and project schedules" for semiconductor chips.

21       37.    Synopsys announced in February 2024 that its digital and analog EDA design

22    flows had been certified by Intel for the 18A process.    In the press release, Synopsys boasted

23    that on the IP side of its relationship with Intel, it was providing a "comprehensive IP portfolio

24    in development for the Intel 18A process."    An Intel executive likewise said in the release that

25    the "longstanding, strategic collaboration with Synopsys provides designers with access to

26    industry-leading certified EDA flows and IP that deliver the best performance, power, and area

27    for the Intel 18A technology."

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38.     IDM 2.0 was a bust.  After IDM 2.0's inception, Intel took billions of dollars of losses on its foundry business, and those losses were growing.  In particular, on April 2, 2024, Intel changed its reporting structure and exposed a $7 billion loss for its foundry unit, up from approximately $5 billion in losses in the prior two years.  In an attempt to pare those losses, Intel announced on August 1, 2024 that it was laying off a full 15% of its workforce, cutting capital expenditures, and suspending its dividend in an attempt to cut $10 billion in annual costs.  Intel, and its struggles, was a common topic of conversation at Synopsys's earnings calls due to its importance to Synopsys's own performance.

39.     Analysts were concerned about the risks that Intel's problems would have on Synopsys's business, but Defendants downplayed these risks.  A common refrain by Defendants was to hype the long-term agreements Synopsys had with its customers, which they claimed gave the Company stability and a high degree of certainty about its performance.

40.     For example, in the Company's earnings call held on August 16, 2023, CFO Shelagh Glaser said that Synopsys was "building out an IP portfolio for each new node, each different foundry" and "when we're signing contracts with customers, we're **signing an agreement for a specific amount of dollars with a specific term**."[1]  Then-CEO Aart J. de Geus expounded later that the contracts are "very powerful for a long period of time, and they establish us as a provider that is one of necessity for foundries to be successful."  De Geus added, "the fact that we have strong agreements to provide [IP] to the leading foundries in the world is fantastic, and that gives us a degree of stability but also potential further growth that is very, very good."  Speaking weeks later during the Citi Global Technology Conference on September 7, 2023, Glaser said that the contracts are "long-term committed deals" and the "**only uncertainty is the timing of when they pull that IP block**.".

41.     Similarly, on February 21, 2024, Synopsys's new CEO Sassine Ghazi discussed a new "14A" chip technology that Intel had recently introduced.  Ghazi claimed that the technology was a "fantastic opportunity" for Synopsys due to its role in getting products

---

[1] Unless otherwise indicated, all emphasis is added.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1    incorporating the technology ready.  Ghazi said the Company's "work starts at least 2 years

2    before" the final product design is ready for mass production, including "deliver[ing] the IP,

3    design[ing] the IP and making sure that our [Design Automation] products are available and

4    ready."

5        **B.  The Synopsys Acquisition of Ansys**

6        42.    In the midst of the worsening of Intel's struggles, Synopsys decided to purchase

7    Ansys.  Synopsys and Ansys first announced their planned merger on January 16, 2024.  They

8    touted the deal as a way to "[b]ring[] together Synopsys' industry-leading EDA solutions with

9    Ansys' world-class simulation and analysis capabilities."

10       43.    Synopsys filed its registration statement for shares to be issued in the merger on

11   April 11, 2024, and Ansys filed its definitive proxy for the merger nearly one week later on April

12   17, 2024.  The two documents, which are virtually identical, touted the compensation Ansys

13   shareholders would receive, which consisted of $197.00 in cash and 0.3450 of a Synopsys share

14   for each Ansys share.  Among other things, Ansys shareholders were told in the documents that

15   "the merger agreement and the merger is advisable and fair to and in the best interests of Ansys

16   and its stockholders," and that they would receive a "29% premium over the closing price . . . of

17   Ansys common stock" before rumors of a deal first emerged.

18       44.    The Registration Statement was filed with the SEC on a Form S-4 on March 13,

19   2024, and amended on April 11, 2024.  The Registration Statement incorporated by reference

20   the Company's Form 10-K for the fiscal year ended October 31, 2023.

21       45.    Ansys shareholders voted to approve the merger on May 22, 2024, with nearly

22   all voting shares voted in favor of the deal.  Following a series of regulatory delays, the deal

23   finally closed on July 17, 2025.  Synopsys stock closed at $589.01 per share that day.

24       46.    On August 1, 2024, Intel announced it was laying off employees and

25   implementing additional cost-cutting measures.  Intel's issues were a central topic of discussion

26   on the next Synopsys earnings call on August 21, 2024. Ghazi assured analysts and investors

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

that Synopsys did "not see much impact" from Intel because its "agreements are committed for long term."

## V.    MATERIALLY FALSE AND MISLEADING STATEMENTS IN THE ACQUISITION DOCUMENTS

47.    The Acquisition Documents contained materially false and misleading statements because Defendants failed to inform investors that its business was heavily dependent on Intel, which was experiencing problems.  Therefore, consideration to acquire Ansys, which included Synopsys stock, was artificially inflated, and in turn, statements concerning the value of the consideration, and the fairness of the Ansys acquisition, were materially false and misleading. These include the following statements:

a.    "The merger consideration to be paid by Synopsys of $197.00 in cash and 0.3450 of a share of Synopsys common stock, which implied an equity value of $390.19 per share of Ansys common stock, based on Synopsys' closing stock price on December 21, 2023, the last full trading day prior to media speculation regarding a potential transaction, would provide Ansys stockholders with the opportunity to receive approximately (1) a 29% premium over the closing price of $303.16 per share of Ansys common stock on December 21, 2023, the last full trading day prior to media speculation regarding a potential transaction, and (2) a 35% premium over the 60-day volume weighted average price for the period ending on December 21, 2023." (Page 68 of Amendment No. 1 to Form S-4, filed on April 11, 2024; Page 68 of the Proxy Statement/Prospectus, filed on April 17, 2024).

b.    "The merger and the merger consideration offered in connection therewith will provide Ansys stockholders with ownership of approximately 16.5% of the combined company on a pro forma basis and, therefore, allow Ansys stockholders to participate through the stock portion of the consideration in any appreciation in the equity value of Synopsys, including as a result of the synergies expected to

result from the merger." (Page 68 of Amendment No. 1 to Form S-4, filed on April 11, 2024; Page 68 of the Proxy Statement/Prospectus, filed on April 17, 2024).

    c.   "The merger agreement and the merger are advisable and fair to and in the best interests of Ansys and its stockholders." (Page 104 of the Proxy Statement/Prospectus, filed on April 17, 2024)

48.    Each of these statements was materially false and misleading because the value of Synopsys stock was inflated, owing to the fact that Synopsys failed to reveal that its largest customer, Intel, was experiencing difficulties that might lead to (and did lead to) Intel reducing or eliminating some of its business with Synopsys.

49.    Finally, the Acquisition Documents incorporated by reference Synopsys's Form 10-K for fiscal year ended October 28, 2023, filed with the SEC on December 12, 2023 ("2023 Form 10-K"). This included the following disclosures of risks that had already materialized, and which were therefore materially misleading:

    a.   "Our dependence on a relatively small number of large customers, and on such customers continuing to renew licenses and purchase additional products from us, for a large portion of our revenue." (2023 Form 10-K at 21).

    b.   "Uncertainty in the macroeconomic environment, including the effects of, among other things, increased global inflationary pressures and interest rates, potential economic slowdowns or recessions, supply chain disruptions, geopolitical pressures, fluctuations in foreign exchange rates and associated global economic conditions have resulted in volatility in credit, equity and foreign currency markets. . . The current uncertain macroeconomic environment could lead some of our customers to postpone their decision-making, decrease their spending and/or delay their payments to us. Such caution by customers could, among other things, limit our ability to maintain or increase our sales or recognize revenue from committed contracts." (2023 Form 10-K at 36)

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

c.   "Consolidation among our customers, and within the industries in which we operate, as well as our dependence on a relatively small number of large customers, may negatively impact our operating results." (2023 Form 10-K at 19).

d.   "Changes in demand for our products due to customers reducing their expenditures, whether as a cost-cutting measure or a result of their insolvency or bankruptcy, and whether due to increased global inflationary pressures and interest rates and a sustained global semiconductor shortage or other reasons" "may cause our backlog, revenue or earnings to fluctuate." (2023 Form 10-K at 21).

e.   "If we fail to optimize our EDA and IP solutions for use with major foundries' manufacturing processes or major IP providers' products, or if our access to such foundry processes or third-party IP products is hampered, then our solutions may become less desirable to our customers, resulting in an adverse effect on our business and financial condition." (2023 Form 10-K at 17).

## VI.   THE TRUTH IS REVEALED AND LOSS CAUSATION

50.   On September 9, 2025, Synopsys issued weak quarterly results including a nearly 8% year-over-year decline in IP revenue, and disappointing guidance for the remainder of the year.   Ghazi explained in that day's press release that the "IP business underperformed expectations."   During the earnings call that afternoon, Ghazi said that the IP business suffered from, among other things, "challenges at a major foundry customer" (which the market immediately understood to be Intel).   He explained that Synopsys had "made a significant investment in building out our IP" for Intel with an "expectation that there will be a return in the second half of '25," but that "did not materialize."   As a "somewhat related" point, Ghazi said that the "industry is increasingly requiring more sophisticated subsystems and chiplet-based solutions" from the IP business to "combat complexity and accelerate time to market."   Synopsys

was investing in responding to that shifting market trend but those efforts "did not yield their intended results."

51.     Despite Glazer's vague explanation of the Intel issue, analysts understood Glazer's remarks and disappointing outlook related to the problems at Intel. According to JP Morgan, Synopsys "had focused a lot of IP resources on Intel's [older] 18A foundry offering," so Intel's pivot to 14A was a problem because Synopsys was suddenly stuck with IP it couldn't sell.  Piper Sandler echoed that view, saying that a "large foundry customer is pivoting its technology which means IP blocks developed for that customer will no longer yield results in 2H25."

52.     In response to this news, the price of Synopsys stock fell $216.59 per share, or nearly 36%, from a close of $604.37 per share on September 9, 2025, to close at $387.78 per share on September 10, 2025.  That drop *eliminated nearly $40 billion in shareholder value*.

53.     The disclosures on September 9, 2025 were surprising and disappointing to the market and constituted new material information about Synopsys.

## VII.    CLASS ACTION ALLEGATIONS

54.     Plaintiff brings this action as a class action on behalf of a class consisting of all persons who purchased or otherwise acquired Synopsys common stock in exchange for their shares of Ansys common stock in the Acquisition for violations of Sections 11, 12(a)(2), and 15 of the Securities Act.  Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of Defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

55.     The members of the Class are so numerous that joinder of all members is impracticable. At all relevant times, both Synopsys and Ansys common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members

of the Class may be identified from records maintained by Synopsys or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

56.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

57.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

58.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

> a.   whether Defendants' statements made in the Acquisition Documents, or promoting the Acquisition, were materially false and misleading; and
>
> b.   the extent of injuries sustained by the members of the Class and the appropriate measure of damages.

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## VIII.    NO SAFE HARBOR

60.     The statutory safe harbor in the Securities Act pertaining to forward-looking statements under certain circumstances does not apply to any of the statements alleged herein to be false and misleading because none of those statements were forward-looking within the meaning of 15 U.S.C. §§ 77z-2(i) and 78u-5(i) or any applicable jurisprudence.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

IX.    CLAIMS FOR RELIEF

### COUNT I: For Violation of §11 of the 1933 Act
### Against All Defendants

61.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.    The Registration Statement contained untrue statements of material fact and omitted to state material facts necessary to make statements made in the Registration Statement (and the documents they incorporated by reference) not misleading.  These statements were false and misleading on March 14, 2024, the date the Registration Statement became effective.

63.    As issuer of the Registration Statement, Synopsys is absolutely liable for the false and misleading statements contained therein.

64.    The Individual Defendants are liable because they each signed the Registration Statement and because each was a Director of Synopsys at the time of the filing of the Registration Statement.

65.    The Individual Defendants acted negligently in that none of them conducted a reasonable investigation to ensure, or had reasonable grounds to believe at the time the relevant parts became effective, that the statements contained in (or incorporated by reference in) the Registration Statement were true and that there were no omissions of material fact required to be stated therein or necessary to make the statements therein not misleading.

66.    When Plaintiff and other members of the Class acquired Synopsys common stock pursuant to the Registration Statement, they did not know, nor in the exercise of reasonable judgment could they have known, of the untruths or omissions contained therein.

67.    Plaintiff and other members of the Class have suffered damages caused by the false and misleading statements in the Registration Statement because the value of the Synopsys stock they received in the Acquisition was inflated.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**COUNT II: For Violation of §12(a)(2) of the 1933 Act**
**Against All Defendants**

68.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.     Defendants offered, sold and solicited the purchase of Synopsys common stock in exchange for Ansys common stock by means of a prospectus.  The Prospectus was filed with the SEC by Synopsys on April 17, 2024 on Form 424B3.

70.     The Prospectus included (and/or incorporated by reference) untrue statements of material fact and/or omitted to state (and/or incorporated by reference documents that omitted to state) material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

71.     Defendants were negligent in that they did not exercise reasonable care to ensure that the Prospectus did not include, or incorporate by reference, untrue or misleading statements or omissions of material fact.

72.     When they acquired Synopsys common stock in the Acquisition for shares of Ansys common stock, Plaintiff and other members of the Class did not know, nor in the exercise of reasonable care could they have known, of the untruths or omissions contained (and/or incorporated by reference) in the Prospectus.

73.     Plaintiff and other members of the Class suffered damages in connection with their acquisition of Synopsys common stock in the Acquisition Documents.

74.     By reason of the foregoing, Defendants are liable to Plaintiff and other members of the Class for either (i) the consideration paid for the shares of Synopsys common stock they acquired, with interest thereon, less the amount of any income received thereon, upon tender of such securities; or (ii) damages as to the Synopsys stock they no longer own.

**COUNT III: For Violation of §15 of the 1933 Act**
**Against the Individual Defendants**

75.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

76. As set forth above, Synopsys is liable for the materially false and misleading statements and omissions contained in the Registration Statement and the Acquisition Documents.

77. In connection with the Acquisition, and at the time all of the Acquisitions Documents were prepared and filed, the Individual Defendants controlled Synopsys by virtue of their positions, and as directors on Synopsys's Board of Directors. The Individual Defendants also signed the Registration Statement.

78. By virtue of their positions at Synopsys, the Individual Defendants had the power to, and did control, the contents of language and statements made in the Acquisition Documents, including the content and issuance of the statements contained (and/or incorporated by reference) in the Acquisition Documents. The Individual Defendants were provided with, or had unlimited access to, copies of the Acquisition Documents (and/or the documents incorporated by reference therein) alleged herein to contain actionable statements or omissions prior to and/or shortly after such statements were issued. They had the power to prevent the issuance of the statements or omissions or to cause them to be corrected. The Individual Defendants each signed the Registration Statement and were directly involved in or responsible for providing false or misleading information contained in the Acquisition Documents.

79. The Individual Defendants cannot demonstrate that they had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which Synopsys is liable for violations of Section 11.

80. Because of their control over Synopsys, the Individual Defendants are liable to plaintiffs jointly and severally with, and to the same extent as, Synopsys.

## X. PRAYER FOR RELIEF

81. WHEREFORE, Plaintiff prays for relief and judgment, as follows:

82. Awarding compensatory damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

83.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

84.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## XI.    JURY DEMAND

85.     Plaintiff hereby demands a trial by jury.

Dated: San Francisco, California
December 30, 2025

Respectfully submitted,

*/s/ M. Elizabeth Graham*
M. Elizabeth Graham (SBN 143085)
GRANT & EISENHOFER P.A.
2325 Third Street, Suite 329
San Francisco, CA 94107
Tel.: (415) 229-9720
Fax: (415) 789-4367
Email: egraham@gelaw.com

Karin E. Fisch (*pro hac vice* forthcoming)
Vincent J. Pontrello (*pro hac vice* forthcoming)
GRANT & EISENHOFER P.A.
485 Lexington Avenue, 29th Floor
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: kfisch@gelaw.com
Email: vpontrello@gelaw.com

*Counsel for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION OF CITY OF STERLING HEIGHTS
## POLICE & FIRE RETIREMENT SYSTEM

I, John Lamerato, on behalf of City of Sterling Heights Police & Fire Retirement System ("Sterling Heights PFRS"), certify pursuant to 28 U.S.C. § 1746 and 15 U.S.C. § 78u-4 as follows:

1.     I am the Chairman of Sterling Heights PFRS. I have reviewed the complaint and am duly authorized to make this certification on behalf of Sterling Heights PFRS.

2.     Sterling Heights PFRS did not purchase or acquire the securities of Ansys, Inc. or Synopsys, Inc. at the direction of counsel or in order to participate in any private action.

3.     Sterling Heights PFRS is willing to serve as a representative party on behalf of the proposed class, including providing testimony at deposition and trial, if necessary.

4.     Attached as Schedule A to this certification is a Sterling Heights PFRS's transactions during the relevant period in the securities that are the subject of this matter.

5.     During the three-year period preceding the date of this certification, Sterling Heights PFRS has sought to serve as a representative party on behalf of a class asserting claims under the federal securities laws as follows:

        a.     *Skolnick v. Evolution AB (publ), et al.*, Case No. 2:24-cv-326-MRP (E.D. Pa.) (appointed lead plaintiff).

6.     Sterling Heights PFRS will not accept any payment for serving as a representative party on behalf of the proposed class beyond its pro rata share of any recovery, except as ordered or approved by the court.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and accurate.

Executed this 16 day of December, 2025.

John Lamerato, Chairman

*City of Sterling Heights*
*Police & Fire Retirement System*

## Synopsys, Inc. -- Schedule A
## City of Sterling Heights Police & Fire Retirement System

**Cusip:**      871607107
**Ticker:**     SNPS

| Purchases / Acquisitions* | | |
|---|---|---|
| **Trade Date** | **Quantity** | **Price** |
| 07/17/25 | 525 | $589.01 |

* Received 525 Synopsys shares for 1,546 Ansys shares (0.3399 stock conversion). The transaction has
  been valued at the closing price on the merger date 7/17/25.